MATHILDA LITTLE vs. MYRON ROSENTHAL
(and three companion cases).

Norfolk. September 14, 1978. — November 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Medical Malpractice*, Tribunal, Bond. *Negligence*, Medical malprac-
tice. *Consumer Protection Act.*

A plaintiff's claims of unfair trade practice under G. L. c. 93A against
    a doctor and a nursing home for allegedly improper medical treat-
    ment were subject to the medical malpractice screening procedure
    established by G. L. c. 231, § 60B. [576–577]
General Laws c. 231, § 60B, requires a plaintiff to do more than simply
    plead facts constituting a legal cause of action; rather, a plaintiff
    must make a sufficient offer of proof to justify further judicial
    inquiry. [577-578]
There was no error in a finding by a medical malpractice tribunal
    constituted under the provisions of G. L. c. 231, § 60B, that a plain-
    tiff's offer of proof was insufficient to warrant a conclusion that a
    legitimate question of liability had been raised. [578–579]
Judges of medical malpractice tribunals did not abuse their discretion
    in refusing to reduce a bond required under G. L. c. 231, § 60B. [579]

FOUR CIVIL ACTIONS commenced in the Superior Court
on December 20, 1976, and December 23, 1976.

Motions to dismiss were heard by *Dimond, J.*, and
*Brown, J.*, a District Court judge sitting under statutory
authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Richard H. Gens (David S. Fox* with him) for Mathilda
Little.

*Allan E. Taylor* for Myron Rosenthal.

*James E. Grumbach & Roberta L. Brundrett* for the Bay
State Management Co.

HENNESSEY, C.J. The plaintiff, Mathilda Little, brought these now consolidated actions in December, 1976, in the Superior Court in Norfolk County, seeking to recover damages for personal injuries suffered while she was a patient of Dr. Myron Rosenthal and of Jamaica Towers Nursing Home. In four separate complaints, the plaintiff alleged that Dr. Rosenthal and the nursing home were each liable for medical malpractice and that each violated G. L. c. 93A, the Consumer Protection Act.

All four cases were referred for consideration to malpractice screening tribunals constituted pursuant to G. L. c. 231, § 60B.[1] After a full hearing, each tribunal found the plaintiff's offer of proof insufficient to raise any legitimate question of liability appropriate for judicial inquiry. The plaintiff thereafter filed motions to reduce the statutory bond of $2,000 and for waiver, substitution or county payment of bond premium, pursuant to G. L. c. 261, § 27B. These motions were denied, and, when the plaintiff subsequently failed to furnish the bond, her actions were dismissed. She appealed, and we transferred the appeal to this court by our own motion.

The plaintiff in her appeal raises a number of constitutional objections to the malpractice screening procedure. All the constitutional issues which would be properly before us were answered in *Paro* v. *Longwood Hosp.*, 373 Mass. 645 (1977), where we sustained the constitutionality of § 60B. Therefore, we need not consider these issues further.

The plaintiff appeals on three additional grounds, however. She first contends that the actions she brought under c. 93A were not subject to the medical malpractice screening procedure and were thus improperly dismissed.

---

[1] Two tribunals were convened. The first, held March 17, 1977, considered the plaintiff's action for negligence and breach of contract against Dr. Rosenthal. A second, combined tribunal considered on April 20, 1977, the actions under c. 93A against Jamaica Towers Nursing Home and Dr. Rosenthal and the action for negligence and breach of contract against the nursing home.

She further maintains that the tribunals erred in finding that the offers of proof presented on her behalf were insufficient to raise a legitimate question of liability appropriate for judicial inquiry under c. 231, § 60B. Finally, she argues that the tribunal judges erred by denying her motions to reduce the bond requirement imposed as a condition for further prosecution. For the reasons discussed below, we conclude that there was no error by the malpractice tribunals and we affirm the judges' dismissal of all four complaints.

We summarize the facts. On October 3, 1975, the plaintiff, Mathilda Little, was admitted to the Jamaica Towers Nursing Home and to the care of Dr. Myron Rosenthal. Suffering from depression, paranoia, and extreme obesity, the sixty-nine year old plaintiff had experienced a period of profound grief the prior August immediately after the death of her husband. The plaintiff remained a patient at Jamaica Towers Nursing Home for approximately eight weeks. Near the end of her stay, she began to suffer from dehydration and bedsores, as a result of which she was transferred to St. Elizabeth's Hospital on November 28 for treatment.

The plaintiff, in two of her four complaints, alleges that the nursing home operator and the attending physician, Dr. Rosenthal, were negligent and in breach of contract for failing to provide a medical plan and proper nursing care while she was a patient at the institution. In the two other complaints, the plaintiff alleges that each defendant violated G. L. c. 93A by engaging in unfair trade practices. Following the filing of answers, all parties appeared before properly constituted medical malpractice tribunals. The plaintiff, while objecting to consideration of her c. 93A claims by such a tribunal, made an offer of proof which included some of the plaintiff's nursing home reports, a copy of the Department of Public Health's Rules and Regulations for the Licensing of Long Term Care Facilities, and a letter signed by two physicians critical of the defendants. The panels found that the evi-

dence presented was insufficient to raise a legitimate question appropriate for judicial inquiry. A bond of $2,-000 was required of the plaintiff as a condition for continuance of the actions; motions for reduction of the bond amount, on grounds of financial hardship, were denied; and, when the plaintiff did not file the bond within the allotted period, the actions were dismissed.

1. The central issue in these cases is whether the second tribunal erred in considering the plaintiff's claims of unfair trade practice under c. 93A. It is the plaintiff's contention that the procedural instructions of G. L. c. 93A, § 9,[2] exempt such claims from the medical malpractice screening procedure. We do not agree. General Laws c. 231, § 60B, inserted by St. 1975, c. 362, § 5, empowers a screening tribunal to appraise "[e]very action for malpractice, error or mistake against a provider of health care." We believe that this language indicates that all treatment-related claims were meant to be referred to a malpractice tribunal. Indeed, an examination of § 60B's legislative history reveals that the Legislature declined to restrict the tribunal's jurisdiction to "every action of tort or breach of contract." Instead, the Legislature chose language—"[e]very action for malpractice, error or mistake"—which evinces an intent that every case involving medical malpractice be appraised by a § 60B screening tribunal. "There is no apparent exception." *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 660 (1977). See Barshak, President's page, 19 Boston B.J. No. 9, at 5 (Oct. 1975).

Moreover, if c. 93A actions against health providers were deemed outside the jurisdiction of the screening tribunal, plaintiffs would institute such actions in the Superior Court and thus avoid "the screening process, the possibility of a bonding requirement being imposed, and the resultant statutory liability in the amount of the bond for expenses if the defense is successful." *Byrnes* v. *Kirby*,

---

[2] Section 9 (1) of c. 93A directs such plaintiffs to bring actions in the Superior Court.

453 F. Supp. 1014, 1019 (D. Mass. 1978). If this kind of circumvention of the § 60B tribunal were permitted, the legislative scheme to establish a screening process for malpractice suits would be partially thwarted, and insurance premiums would necessarily increase in proportion to the costs of defending against frivolous claims. Since the tribunal procedure was intended to eliminate such costs by way of pretrial screening, see *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 647 (1977); *Austin, supra* at 655 n.4, legislative policy, as well as statutory language, would appear to dictate tribunal consideration of c. 93A claims of improper medical treatment.

Nevertheless, we distinguish those c. 93A actions which allege unfair trade practices in medical treatment from those which merely raise such questions as fraudulent or deceptive billing practices by a health care provider. See *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.*, 371 Mass. 117 (1976). In the latter case, the tribunal procedure would be inappropriate since there would be no issue of *medical* "malpractice, error or mistake."[3] No such problem, however, is presented by the instant cases. Since the plaintiff herself admits that the same set of facts supports both her malpractice claims and her c. 93A claims, the tribunals were correct in considering the merits of all her actions.

2. The plaintiff next maintains that each screening panel exceeded the scope of its statutory authority, and improperly judged her claims, by applying too stringent a standard to her offer of proof. It is submitted by the plaintiff that the proper role for the tribunal is one analogous to that of a judge faced with a motion for dismissal under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). As in that situation, where the judge must determine merely whether the plaintiff has stated grounds on which relief

---

[3] Regardless of forum, we again note that "[t]he existence of unfair acts and practices must be determined from the circumstances of each case." *Commonwealth* v. *DeCotis*, 366 Mass. 234, 242 (1974).

may be granted, the plaintiff here suggests that the tribunals' determination should be strictly grounded on the sufficiency of the plaintiff's allegations.

Our reading of the statute suggests otherwise. Section 60B, albeit imprecise, plainly requires the plaintiff to do more than simply plead facts constituting a legal cause of action. The statute instructs the tribunal to "determine if the *evidence* presented . . . is sufficient to raise a legitimate question of liability appropriate for judicial inquiry" (emphasis supplied). Indeed, the statute goes further by expressly delineating possible sources of admissible evidence, and it even empowers the tribunal to "summon or subpoena any such records or individuals to substantiate or clarify any evidence which has been presented before it . . . [or] to conduct any necessary professional or expert examination of the claimant or relevant evidentiary matter and to report or to testify as a witness thereto." In view of these provisions, it is clear that the tribunal's mandate is to evaluate evidence.[4] Thus, the tribunal's task should be compared, not to the process of dismissal, under Mass. R. Civ. P. 12 (b) (6), but rather to the trial judge's function in ruling on a defendant's motion for directed verdict. See McLaughlin, A Look at the Massachusetts Malpractice Tribunal System, 3 Am. J. of L. & Med. 197, 205 (1977). Accordingly, the panels did not err in failing to accept the plaintiff's allegations as a sufficient offer of proof to justify further judicial inquiry. Moreover, we cannot say that the tribunals erred in their appraisal of the proffered evidence, since we believe that the plaintiff's offer of proof was insufficient to warrant a

---

[4] The statute does not call for a preliminary "trial" of the case, or a consideration of the "evidence," in the full sense of these procedures. On the other hand, a plaintiff does not satisfy his burden by merely making a verbal offer of proof or, as we make plain in the instant case, by merely alleging an adequate array of facts in the pleadings. The statute gives examples of the documentary presentation, such as doctors' reports, which will be acceptable in support of the plaintiff's claim.

conclusion that a legitimate question of liability had been raised.

3. Lastly, the plaintiff asserts that the judges erred by failing to grant her motion to reduce the required bond under § 60B. We disagree. The power to reduce the required bond under c. 231, § 60B, is discretionary with the presiding judge, *Paro, supra* at 653-654, and the record fails to disclose any abuse of discretion. The plaintiff also challenges the presiding judges' denial of her "request for waiver, substitution or county payment of fees and costs," pursuant to G. L. c. 261, § 27D, inserted by St. 1974, c. 694, § 3. However, we need not reach this question, inasmuch as it is not properly before this court.[5]

*Judgments affirmed.*

---

[5] Chapter 261, § 27D, directs appeals of denied Superior and Probate Court motions for "waiver, substitution or county payment of fees and costs" to the single justice of the Appeals Court.