COLLEEN BING, individually and as executrix,[1] & another[2] *vs.*
ALBERT W. DREXLER & others.[3]

No. 06-P-459.

Worcester. February 8, 2007. - May 30, 2007.

Present: RAPOZA, C.J., COWIN, & KAFKER, JJ.

*Medical Malpractice,* Tribunal, Vicarious liability.

A Superior Court judge improperly dismissed a claim against the defendant
physician following a medical malpractice tribunal's finding that there was
insufficient evidence to proceed against that physician, to the extent that
the claim was based on vicarious liability (for the negligence of the
physician's assistant whom the physician defendant supervised), where
such a claim was not one of medical malpractice, error, or mistake, and
thus not one appropriate for tribunal consideration. [188-191]

CIVIL ACTION commenced in the Superior Court Department on
March 10, 2005.

A motion to dismiss was heard by *Peter W. Agnes, Jr.,* J.

*Abigail R. Williams* for the plaintiffs.

*Daniel M. Wrenn* for Kenneth H. Kronlund.

*Brent A. Tingle,* for Albert W. Drexler & another, was present
but did not argue.

COWIN, J. The plaintiff, Colleen Bing, appeals on her own
behalf, as well as on behalf of the estate of her late husband,
Walter G. Bing, and her son, Joshua Bing, from the dismissal
by a judge of the Superior Court of her claim against defendant
Kenneth H. Kronlund, M.D. The dismissal followed a finding
by a medical malpractice tribunal, see G. L. c. 231, § 60B, that
there was insufficient evidence to proceed against Kronlund,
and the subsequent failure on the part of the plaintiff to post a

---

[1] Of the estate of Walter G. Bing.

[2] Joshua Bing, by his mother and next friend, Colleen Bing.

[3] Ashraf F. Elkerm, Kenneth H. Kronlund, and Fallon Clinic, Inc.

bond.[4] On appeal, the plaintiff argues essentially that her claim against Kronlund, being one based only on vicarious liability, was outside the tribunal's jurisdiction and should not have been dismissed. To the extent that the plaintiff's claim against Kronlund is limited to liability based on a principal-agent relationship, we agree and therefore reverse the judgment of dismissal.

1. *Background.* Applying the directed verdict standard, see *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978), the tribunal could find that, on February 23, 2001, the plaintiffs' decedent (Bing) went to an office of defendant Fallon Clinic, Inc., complaining of stomach pain. He was seen principally by defendant Albert W. Drexler, a physician's assistant. At all material times, Kronlund was Drexler's supervising physician, and Kronlund and Drexler were each employed by Fallon. Drexler arranged for an upper gastrointestinal (GI) series with small bowel follow-through along with a gallbladder ultrasound, noting that "[i]f the records indicate . . . a problem with the colon, we shall consider a barium enema or a possible GI referral at that time." The upper GI series revealed a "filling defect" in the cecum, and a radiologist recommended a barium enema. Bing asked Drexler if the barium enema was necessary, and according to Bing's affidavit, Drexler said it was not. Bing did not go for a barium enema but claimed, again in his affidavit, that he would have undergone the procedure had Drexler recommended it.

In January, 2002, Bing complained of rectal pain and returned to Fallon. He was seen on this occasion by defendant Ashraf F. Elkerm, M.D., who diagnosed the cause as hemorrhoids. A guaiac (fecal occult blood) test was "slightly positive." In April, 2003, Bing developed diarrhea, vomiting, and abdominal

---

[4]General Laws c. 231, § 60B, as amended by St. 1986, c. 351, § 21, provides in part that, in the event a tribunal finds in favor of a defendant, "the plaintiff may pursue the claim through the usual judicial process only upon filing a bond in the amount of six thousand dollars . . . secured by cash or its equivalent . . . payable to the defendant . . . for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment. . . . If said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed." A judge of the Superior Court may in his discretion increase the amount of the bond or, if the plaintiff is indigent, reduce (but not eliminate) it. *Ibid.*

pain and cramps. An upper endoscopy was performed, but revealed no abnormalities. In August, 2003, Bing had another positive occult blood test, and a colonoscopy showed two polyps and an adenocarcinoma. After a colectomy, a biopsy confirmed that the colon cancer had metastasized. Bing had chemotherapy, a subsequent laparotomy and additional chemotherapy, but died on January 1, 2006.

Prior to his death, Bing sued Drexler and Fallon, the first for negligence, the latter in a count entitled "ostensible agency/ vicarious liability." He amended his complaint to assert an additional negligence claim against Elkerm and a claim also labeled "ostensible agency/vicarious liability" against Kronlund.[5] A medical malpractice tribunal was organized, and Bing's expert opined that, had Drexler ordered a barium enema, "Bing's colon cancer would have been diagnosed as early as June 2001 or March 2002, when, more likely than not, he would have been treated for cure, and had a significantly improved prognosis." Likewise, the expert concluded that if Elkerm had followed up on the positive fecal occult blood test, the cancer would have been diagnosed as early as January, 2002. No evidence of negligence on Kronlund's part was presented. The tribunal found sufficient evidence to raise a legitimate question of liability on the part of Drexler, Elkerm, and Fallon, but insufficient evidence against Kronlund. When the plaintiff failed to file a bond, the count against Kronlund was dismissed. A separate and final judgment entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), and the plaintiffs' appeal followed.

2. *Discussion.* General Laws c. 231, § 60B, inserted by St. 1975, c. 759, § 3, provides, in relevant part, that "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal . . . , at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." The "language indicates that all treatment-related claims were meant to be referred to a

---

[5]Following Bing's death, his wife, as executrix of his estate, was substituted for him as plaintiff.

malpractice tribunal." *Little* v. *Rosenthal*, 376 Mass. at 576. In aid of the legislative purpose to establish a screening process for medical malpractice actions to the end that insurance premiums be kept under control, *id.* at 577, the statute has been given broad application where an issue of *medical* malpractice, error, or mistake is involved. Thus a claim of an unfair trade practice in medical treatment under G. L. c. 93A has been held to be subject to tribunal consideration. *Id.* at 576-577. Likewise, the tribunal is empowered to pass on a claim seeking recovery against a physician who agrees expressly to produce a certain medical result, see *Sullivan* v. *O'Connor*, 363 Mass. 579, 581-583 (1973), in order to determine "whether the medical result obtained is consistent with the medical result allegedly promised." *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514, 521 (1979).

There are, however, limits to the scope of the tribunal's authority. The tribunal is to "evaluate only the medical aspects of a malpractice claim for the purpose of distinguishing between cases of tortious malpractice and those including 'merely an unfortunate medical result.' " *Ibid.* (concluding that question whether parties entered an agreement beyond competence of screening tribunal). Thus, while the line of demarcation between issues of medical malpractice and other issues is not always perfectly clear, see, for example, our separate opinions in *Segal* v. *First Psychiatric Planners, Inc.*, 68 Mass. App. Ct. 709 (2007), certain questions have been held expressly as falling outside the parameters of G. L. c. 231, § 60B. Application of the statute of limitations is not within the tribunal's jurisdiction. See *McMahon* v. *Glixman*, 379 Mass. 60, 67-68 (1979). Similarly, an alleged failure on the part of defendant employees of a psychiatric unit to comply with the provisions of G. L. c. 123, § 12 (the civil commitment statute), did not require submission of the claim to a malpractice tribunal. See *Leininger* v. *Franklin Med. Center*, 404 Mass. 245, 248 (1989) (failure to comply with statute not a medical decision). See also *Koltin* v. *Beth Israel Deaconess Med. Center*, 62 Mass. App. Ct. 920, 920 (2004) (whether after accepting plaintiff as a patient, medical provider has duty to continue care a question of law not implicating professional judgment or competence of such provider).

In the present case, the single count of the amended complaint that seeks relief against Kronlund appears to us to be a mixture of both agency and negligence claims. On the one hand, the count is entitled "ostensible agency/vicarious liability." Following the factual allegations, the conclusory paragraph proffers that Kronlund "is vicariously liable for the acts and omissions of his agent, servant and/or employee, Defendant Albert W. Drexler, P.A." That the plaintiff conceived of this as stating a case of derivative liability only is supported further by the fact that she offered to the tribunal no evidence of medical negligence on Kronlund's part. That the plaintiff apparently conceded that Drexler was employed not by Kronlund but by Fallon does not constitute a waiver of her vicarious liability claim. Employment is not the sole criterion. "The right to control an agent's activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against an agent's principal." *Kelley* v. *Rossi,* 395 Mass. 659, 661 (1985).

On the other hand, the defendant accurately characterizes the factual allegations of the count as sounding in negligence. Thus, the plaintiff alleged that Kronlund held himself out as a competent health care provider; her decedent relied on that representation; he accepted medical care from Drexler on the basis of Kronlund's promise "that he would assign a competent, qualified physician's assistant, capable of appropriately evaluating and treating" the patient; and Drexler was negligent. These assertions call into question Kronlund's judgment in selecting Drexler to examine and diagnose the patient, as well as the adequacy of Kronlund's supervision of the physician's assistant and management of the case. Expert testimony could have been presented to the tribunal on those issues, see *Aceto* v. *Dougherty,* 415 Mass. 654, 658-659 (1993), but was not, and the tribunal concluded correctly that no legitimate question of possible medical negligence had been raised.

To the extent, however, that the count alleges that Kronlund's relationship with Drexler was such that he is derivatively liable as a result of Drexler's alleged negligence, the claim is not a claim of *medical* malpractice, error, or mistake, and thus not one appropriate for tribunal consideration. See *Little* v. *Rosenthal,*

376 Mass. at 577. Questions of agency are materially different from those questions of medical practice for which the tribunal system was created. See *Kopycinski* v. *Aserkoff*, 410 Mass. 410, 419 (1991), quoting from *Flagg* v. *Scott*, 9 Mass. App. Ct. 811, 812 (1980) ("The question whether the individual defendant was a person for whose conduct the defendant hospital would be responsible was beyond the competence of the tribunal"). See also *Dumes* v. *Genest*, 30 Mass. App. Ct. 379, 383 (1991) ("[I]t was not within the purview of the tribunal to consider the possible vicarious liability of the hospital").

3. *Disposition.* To the extent that the judgment dismissed allegations of medical negligence against Kronlund, it is affirmed. To the extent that the judgment dismissed allegations of vicarious liability, the judgment is reversed and the plaintiff may proceed with that claim.

*So ordered.*